UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


| | | |
|---|---|---|
| M3GIRL DESIGNS LLC, a Texas<br>Limited Liability Company, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| VS. | ) | 3:09-CV-2334-G |
| | ) | |
| PURPLE MOUNTAIN SWEATERS, a | ) | **ECF** |
| Florida corporation, and CAROL ANN | ) | |
| BISHOP, an individual residing in | ) | |
| Florida, | ) | |
| | ) | |
| Defendants. | ) | |


<u>**MEMORANDUM OPINION AND ORDER**</u>


Before the court is the motion of the defendants, Purple Mountain Sweaters

("Sweaters") and Carol Ann Bishop ("Bishop"), to dismiss the complaint of the

plaintiff, M3Girl Designs, LLC ("M3Girl"), for lack of personal jurisdiction and

insufficient service of process under FED. R. CIV. P. 12(b)(2), and (5) respectively

(docket entry 6). For the reasons set forth below, the motion to dismiss for lack of

personal jurisdiction is granted, and the motion to dismiss for insufficient service of

process is denied as moot.

# I. BACKGROUND

This is an action brought by M3Girl against Sweaters and Bishop (collectively, "the defendants") for copyright and trademark infringement, false designation or description, and misappropriation and unfair competition. *See* Plaintiff's Original Complaint ("Complaint") ¶ 4. M3Girl is a Texas limited liability company with its principal place of business in Farmers Branch, Texas. *Id.* ¶ 1. M3Girl creates, manufacturers, and sells interchangeable bottle cap necklaces containing artwork in the interior of the bottle caps. *Id.* ¶¶ 8, 12. M3Girl markets and sells these necklaces under the registered trademark "Snap Caps®" and has obtained copyright registrations for visual works related to the interchangeable bottle cap necklaces, the artwork on the interior of the bottle caps, and a magnetic "keeper" board that displays and stores interchangeable bottle caps that are not being worn. *Id.* ¶¶ 9, 11; *see also* Plaintiff's Response In Opposition to Defendant's Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction ("Plaintiff's Response") at 1-2.

Bishop is an individual residing in Parrish, Florida. Complaint ¶ 3. Sweaters is a sole proprietorship, owned and operated by Bishop, with its principal place of business in Parrish, Florida. See *id.* ¶ 2; *see also* Plaintiff's Response at 8-9. Neither Bishop nor Sweaters (1) is licensed to conduct business in Texas, (2) has ever done business in Texas, (2) has ever owned property in Texas, (3) has ever traveled to

Texas, (4) maintains an agent for service of process in Texas, or (4) was served with process in Texas. Affidavit in Support of Defendant's Motion to Dismiss ("Bishop Dismissal Affidavit") ¶¶ 16, 19-22, *attached to* Memorandum in Support of Defendant's Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction *as* Exhibit A; Memorandum in Support of Defendant's Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction ("Motion to Dismiss") at 2-3. The defendants sell crafts and homemade goods primarily to vendors and retailers in the northeastern and east coast regions of the United States. *See* Bishop Dismissal Affidavit ¶¶ 10, 29-30.

Bishop owns and operates the website www.purplemountainbaby.com ("the defendants' website"). Affidavit in Support of Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss ("Bishop Reply Affidavit") ¶ 5, *attached to* Defendant's Reply to Plaintiff's Opposition to Defendant' Motion to Dismiss ("Defendant's Reply") *as* Exhibit A. The defendants' website enables users to (1) view product images, (2) submit orders online through a "shopping cart" feature, and (3) solicit information from the defendants by submitting questions and comments directly to the defendants through a "contact us" feature. *See* Declaration of D. Scott Hemingway in Support of Response in Opposition to Motion to Dismiss and/or Transfer ("Hemingway Affidavit") ¶ 2, *attached to* Plaintiff's Response as Exhibit 1. To complete a purchase online, however, a user must access a third-party

website, www.paypal.com ("PayPal"), to transmit payment through PayPal to the defendants. *See* Bishop Reply Affidavit ¶ 6. The defendants' website includes a hyperlink to PayPal. *Id.* The defendants argue that Internet sales are processed in the same manner as orders received by telephone, mail, or facsimile: the defendants enter into a contract with the purchaser when Bishop ships the product from her home in Florida. *See* Defendant's Reply at 2.

Bishop experimented with online sales of bottle caps necklaces, but she later abandoned that effort. Bishop Reply Affidavit ¶ 8. Before doing so, the defendants received two orders for bottle caps via the defendants' website; one of those orders, a purchase of four bottle caps and two necklace chokers, was shipped to Marshall, Texas.[1] *Id.* ¶¶ 9-10. The defendants generated less than $600 of gross revenue from the item sold to Texas residents. Bishop Dismissal Affidavit ¶ 11. The defendants have not made any other sales to customers in Texas. *Id.* ¶¶ 12, 14, 17. The bottle caps necklaces shipped to Texas contained images that the defendants claim were licensed from independent third-party sources. Bishop Reply Affidavit ¶¶ 17, 27.

---

[1]     The defendants' evidence seems to suggest that two "sales" have been shipped to Texas. Bishop Dismissal Affidavit ¶ 13. But it is not clear whether the two sales were made as part of the same "order," that is, the one financial transaction with the forum state. M3Girl does not dispute that the defendants only consummated one financial transaction with the forum state involving the sale of four bottle caps and two choker necklaces, so the court accepts the defendants' contention that this is the only transaction between the defendants and the forum state involving the sale of bottle cap necklaces.

M3Girl alleges that the defendants are infringing its intellectual property rights by (1) not removing the infringing subject matter from the defendants' website, (2) taking orders of infringing products, (3) using the mark "Snap Caps" or a substantially similar trademark in commerce, (4) advertising, making, distributing, and selling infringing jewelry products that possess the name "Snappy Bottle Cap Necklaces", and/or (5) offering a confusingly similar product line using that tagline and other trademark slogans likely to create consumer confusion. *See* Complaint ¶¶ 23, 24, 48-51, 60. The plaintiff's only specific allegation of infringing activity in Texas relates to the appearance of the slogan "Snappy Bottle Cap Necklaces" on the defendants' website, which has been accessed, and remains accessible, in Texas. *See* Plaintiff's Response at 6, 20; *see also* Complaint ¶ 10.

The defendants admit that they previously applied the descriptive phrase "Snappy Bottle Cap Necklaces" to a sub portion of the defendants' website. *See* Motion to Dismiss at 10; *see also* Motion to Dismiss, Exhibit 1 ("Prescott Letter"). The defendants claim, however, that they completely removed all references and uses of the term "snappy" from its website on or before October 16, 2009, and that the sale to Marshall, Texas occurred on October 28, 2009, after the defendants ceased the allegedly infringing activity. *See* Prescott Letter; *see also* Bishop Reply Affidavit ¶ 26. M3Girl submitted to the court a true copy of the defendants' website, showing the appearance of the slogan "Snappy Bottle Cap Necklaces" on the defendants'

website on or around October 6, 2009. *See* Plaintiff's Response, Exhibit 1A. No evidence in the record suggests that the slogan, or anything remotely similar to it, appeared on the defendants' website after October 16, 2009, the date by which the defendants claim to have removed all such references. Evidence submitted by M3Girl as true and correct copies of the defendants' website accessed on October 16, 2009, and again on January 28, 2010, shows that the previous reference to the allegedly infringing slogan has been removed and the term "snappy", or phrase "Snappy Bottle Cap Necklaces", does not appear anywhere on the defendants' website. *See* Plaintiff's Response, Exhibits 1B, 1C.

Bishop is a breast cancer survivor currently undergoing treatment for her condition. *See* Defendant's Reply at 2. Bishop is defending against this action *pro se* on behalf of herself and Sweaters,[2] and she claims that the cost of defending against this litigation in Texas will be prohibitive. *Id.* at 10. Her annual income has not exceeded $60,000 during the past four tax years (2005-2008). See *id.* at 8-9. In fact, Bishop operated Sweaters and the defendants' website at a net loss in tax year 2008. See *id.*

---

[2]    After considering Bishop's motion for reconsideration (docket entry 11), the court concluded that Bishop may represent herself and Sweaters *pro se* because Sweaters is not a legal entity separate and apart from Bishop. Sweaters is a sole proprietorship of which Bishop is the sole proprietor; therefore, it does not constitute the unauthorized practice of law under Texas law for Bishop to act on behalf of both herself and Sweaters in this case. *See* docket entry 14.

By contrast, M3Girl's 2008 revenue was reported to be in the area of $1.6 million dollars. *Id*. M3Girl's jewelry is sold in several hundred Learning Express stores across the country, and its products are offered in over 1200 retail sales locations in forty-six states in the United States, including the defendants' home state of Florida. Plaintiff's Response at 1-2; *see also* Plaintiff's Response, Exhibit 7. The plaintiffs travel extensively across the United States to promote their product line. *See* Plaintiff's Response at 2.

On December 8, 2009, M3Girl filed this action against Bishop and Sweaters alleging copyright infringement, trademark infringement, false designation or description, and misappropriation and unfair competition. *See* Complaint. On January 19, 2010, the defendants filed this motion to dismiss for insufficient service of process and lack of personal jurisdiction.

## II.  ANALYSIS

### A.  The Factual Standard:  A *Prima Facie* Case

When a non-resident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the district court has jurisdiction over the nonresident. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592 (5th Cir. 1999). If the district court decides the matter without an evidentiary

hearing, the plaintiff may meet its burden by presenting a *prima facie* case for personal jurisdiction. *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.

The court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and any conflicts in the facts must be resolved in favor of the plaintiff. *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592. In making its determination, the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized discovery methods. *Allred v. Moore & Peterson*, 117 F.3d 278, 281(5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998); *Thompson v. Chrysler Motors Corporation*, 755 F.2d 1162, 1165 (5th Cir. 1985).

## B. The Legal Standard

A federal district court may exercise personal jurisdiction over a non-resident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that she would be amenable to the jurisdiction of a state court in the same forum. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984). Applying state law, this court must first determine whether Texas, the forum state, could assert long-arm

jurisdiction over the nonresident.  *Id*.  The Texas long-arm statute, however, confers

jurisdiction to the limits of the federal constitution.  *Schlobohm v. Schapiro*, 784

S.W.2d 355, 357 (Tex. 1990).  Therefore, the court need only concern itself with the

federal due process inquiry.  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999);

*Wilson*, 20 F.3d at 647 n.1; *see also* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041-

17.042 (Vernon 1997) (Texas long-arm statute).

## C.  Due Process Requirements

Due process requires the satisfaction of two elements to exercise personal

jurisdiction over a non-resident defendant:  (1) the nonresident must have some

minimum contact with the forum that results from an affirmative act on her part such

that the nonresident could anticipate being haled into the courts of the forum state,

and (2) it must be fair or reasonable to require the nonresident to defend the suit in

the forum state.  *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78 (1985);

*Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1073 (5th

Cir.), *cert. denied*, 498 U.S. 900 (1990).  The Due Process Clause ensures that persons

have "fair warning that a particular activity may subject [them] to the jurisdiction of

a foreign sovereign."  *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433

U.S. 186, 218 (1977) (Stevens, J., concurring)).

To establish minimum contacts with the forum, a non-resident defendant must

do some act by which she "purposefully avails [her]self of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). However, the unilateral activity of one asserting a relationship with the non-resident defendant does not satisfy this requirement. *Burger King*, 471 U.S. at 474 (quoting *Hanson*, 357 U.S. at 253); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (citing *Kulko v. California Superior Court*, 436 U.S. 84 (1978); *Hanson*, 357 U.S. at 253). In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a non-resident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *J.R. Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quotations and citations omitted). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773,

777 (5th Cir. 1986) (citations omitted), *cert. denied*, 481 U.S. 1015 (1987).  General

jurisdiction, on the other hand, may be found when the nonresident's contacts with

the forum are "continuous and systematic," even though the claim is unrelated to

those contacts.  *Helicopteros Nacionales*, 466 U.S. at 415-16.

Nevertheless, under both specific and general jurisdiction analysis, "the

constitutional touchstone remains whether the defendant purposefully established

'minimum contacts' in the forum [s]tate."  *Burger King*, 471 U.S. at 474 (quoting

*International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945)).  The

"purposeful availment" requirement of the minimum contacts inquiry "ensures that a

defendant will not be haled into a jurisdiction solely as a result of 'random,'

'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party

or a third person.'"  *Id*. at 475 (citations omitted).  A plaintiff must establish a

substantial connection between the non-resident defendant and the forum state.  *Jones

v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert.

denied*, 506 U.S. 867 (1992); *Bearry v. Beech Aircraft Corporation*, 818 F.2d 370, 374

(5th Cir. 1987) (citing *Burger King*, 471 U.S. at 475 n.18; *McGee v. International Life

Insurance Company*, 355 U.S. 220, 223 (1957)).

A court must consider all factors when making the purposeful availment

inquiry -- "no single factor, particularly the number of contacts, is determinative."

*Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  "[W]hether the minimum

contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982). When the underlying cause of action is based on an intentional tort, a single act by the defendant can be sufficient to establish personal jurisdiction if that act gives rise to the claim being asserted. *Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001); see also *FCA Investments Company v. Baycorp Holdings, Ltd.*, 48 F. App'x 480 (5th Cir. 2002) (finding that in a claim for the intentional tort of fraud, a single phone call into the forum state was sufficient to establish personal jurisdiction where the content of that phone call was the subject matter of the fraud claim).

### 1. *Specific Jurisdiction*

M3Girl argues that the defendants' Internet activities establish minimum contacts with Texas because the defendants do business over the Internet by entering into contracts with residents of other states and transmitting computer files via the defendants' website. Plaintiff's Response at 18. M3Girl contends that the defendants' website, which is "accessible to the public, including persons residing in the State of Texas and the Northern District of Texas," is evidence of the defendants' contacts with forum state. *Id*. at 19. M3Girl proffers that the defendants "admit that their interactive website <u>has been accessed</u> in the Northern District of Texas

(including the accused infringing trademark slogan) to sell product . . . ." *Id*. at 20 (emphasis in original). According to M3Girl, the mere presence of allegedly infringing materials on the defendants' website is enough to satisfy minimum contacts. See *id*. M3Girl maintains that by offering for sale, displaying, and selling products on a website which is both accessible in Texas and contains materials that infringe M3Girl's intellectual property rights, the defendants have purposely availed themselves of the benefits and protections of doing business in Texas, and are therefore amenable to personal jurisdiction in this case.

The Fifth Circuit has adopted the approach of *Zippo Manufacturing Company v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), to determine whether a non-resident defendant's operation of an Internet website provides the requisite minimum contacts for personal jurisdiction. See *Revell*, 317 F.3d at 470; *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999). The *Zippo* decision established a sliding-scale test to evaluate the "nature and quality of commercial activity that an entity conducts over the Internet." *Zippo*, 952 F. Supp. at 1124. Judges of this court have previously employed the *Zippo* analysis in specific jurisdiction cases. See *Mothers Against Drunk Driving v. DAMMADD, Inc.*, No. 302CV1712G, 2003 WL 292162 at *5 (N.D. Tex. Feb. 7, 2003) (Fish, C.J.); *Carrot Bunch Co., Inc. v. Computer Friends, Inc.*, 218 F. Supp. 2d 820, 824-26 (N.D. Tex.

2002) (Buchmeyer, J.); *American Eyewear, Inc. v. Peeper's Sunglasses and Accessories, Inc.*, 106 F. Supp. 2d 895, 900 n.10 (N.D. Tex. 2000) (Fitzwater, J.).

The *Zippo* sliding-scale analysis categorizes Internet use into a three-point spectrum. At one end of the spectrum, a defendant "merely establishes a passive website that does nothing more than advertise on the Internet." *Mink*, 190 F.3d at 336. Personal jurisdiction based on a "passive website" is inappropriate. See *id.*; *Carrot Bunch*, 218 F. Supp. 2d at 825. At the other end of the spectrum, "a defendant clearly does business over the Internet by entering into contracts with residents of other states which 'involve the knowing and repeated transmission of computer files over the Internet . . . .'" *Mink*, 190 F.3d at 336 (quoting *Zippo*, 952 F. Supp. at 1124). In this situation, personal jurisdiction over the nonresident defendant may be proper. See *id.*; *Carrot Bunch*, 218 F. Supp. 2d at 825. Between these two extremes are cases where a defendant's website allows a visitor to exchange information with a host computer. *Mink*, 190 F.3d at 336. "In this middle ground, 'the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the [w]ebsite.'" *Mink*, 190 F.3d at 336 (quoting *Zippo*, 952 F. Supp. at 1124); *American Eyewear*, 106 F. Supp. 2d at 901. The critical inquiry, however, as with any personal jurisdiction case, is whether the contacts suggest that the non-resident defendant purposefully directed her activities toward the forum state or purposefully availed herself of the privilege of

conducting activities within the forum state. See *Origin Instruments Corporation v. Adaptive Computer Systems, Inc.*, No. 397CV2595-L, 1999 WL 76794 at *2 (N.D. Tex. Feb. 3, 1999) (Lindsay, J.); see also *World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 297 (1980).

The defendants' website allows users to browse products, contact the defendants directly, and order products online using a shopping cart feature. Hemingway Affidavit ¶ 2. But a user cannot consummate a commercial transaction online without accessing and logging-into a third-party website, PayPal. Thus, a user who does not have access to PayPal, or who chooses not to use that service, cannot purchase products from the defendants online. *See* Defendant's Reply at 2. The defendants' website is certainly more than a passive website used solely for advertising, but it does not fall neatly into the "doing business" category of the *Zippo* sliding scale because it is not a "virtual store" through which the defendants market and sell their goods by repeatedly entering into contracts with users from the forum state. See *Stomp, Inc. v. Neato, LLC*, 61 F. Supp. 2d 1074, 1078 & n.7 (C.D. Cal. 1999). The defendants' website does, however, allow a user to exchange information to a host computer by using the "shopping cart" and "contact us" features. The defendants' website, therefore, falls in the "middle ground" of the *Zippo* sliding scale. See *Zippo*, 952 F. Supp. at 1124.

Since the defendants' website falls into the middle of the *Zippo* spectrum, the court must determine the level of interactivity and the commercial nature of the exchange of information that occurs on the website. *Drive Financial Service, LP v. Ginsburg*, No. 3:06-CV-1288-G, 2007 WL 2084113 at *6 (N.D. Tex. July 19, 2007) (Fish, C.J.). Of particular import is the nature and quality of the interaction between the defendants and residents of the forum state. See *Revell*, 317 F.3d at 470. Here, the defendants' have made only one sale, online or otherwise, to residents of Texas, yielding the defendants roughly $600 in gross revenue. Bishop Reply Affidavit ¶¶ 9-11; Bishop Dismissal Affidavit ¶ 11. M3Girl's own evidence corroborates the defendants' contention that the allegedly infringing slogan did not appear on the defendants' website when that sale occurred. *See* Plaintiff's Response, Exhibits 1B, 1C. The dearth of even unrelated sales to the forum state suggests that the defendants have not purposefully availed themselves of the benefits of conducting business in Texas. While the number of contacts with the forum state is not determinative, it is one of the relevant factors to be considered within the totality of the circumstances in assessing the propriety of exercising personal jurisdiction over a nonresident. *Stuart*, 772 F.2d at 1192. Here, the fact that the defendants only made one sale to Texas residents weighs heavily against haling them into court in Texas to defend against this litigation. This is especially true because the plaintiff has not demonstrated a substantial connection between its claims and the defendants' contact

with forum state. The defendants' attenuated contact with Texas is not sufficient or substantial enough for this court to exercise personal jurisdiction in this case.

The court acknowledges that, in tort cases, one act by a non-resident defendant that gives rise to the plaintiff's claim may be sufficient to establish minimum contacts. *Lewis*, 252 F.3d at 358-59; *FCA Investments*, 48 F. App'x at480. The court finds, however, that in the present case the plaintiff has not made a *prima facie* showing that its claims arise out of, or relate to, the defendants' contacts with the forum state. M3Girl does not allege that the defendants intentionally directed their activities to Texas or knew that it was highly likely that the plaintiff would suffer harm in Texas. See *Calder v. Jones*, 465 U.S. 783, 789-90 (1984) (applying "effects test"); *Veracity Research Company v. Bateman*, No. 3:07-CV-2158-L, 2008 WL 2951910 at *5 (N.D. Tex. Aug. 1, 2008) (Lindsay, J.) (same); *Isbell v. DM Records, Inc.*, No. 3:02-CV-1408-G, 2004 WL 1243153 at *10 (N.D. Tex. June 4, 2004) (Fish, C.J.) ("The *Calder* 'effects' test applies to intentional business torts, including copyright infringement"). Nor does M3Girl allege that the products sold by the defendants to residents of Texas somehow incorporates technology covered by a patent, or misappropriates images protected by a copyright, owned by M3Girl. See *Stomp*, 61 F. Supp. 2d at 1077. Rather, M3Girl's claims arise out of the defendants' use of the slogan "Snappy Bottle Cap Necklaces" on the defendants' website, and the mere presence of images on the defendants' website that allegedly infringe M3Girl's

copyright protections. Complaint ¶¶ 10, 11. M3Girl never alleges, and the evidence does not suggest, that its harm was caused by the defendants' contacts with the forum state. See *Thompson*, 755 F.2d at 1172-73 (explaining that specific jurisdiction requires harm arising out of the defendant's contact with the forum state). Instead, M3Girl alleges harm resulting from the defendants' maintenance of a website that contains the allegedly infringing material and is *accessible* in Texas. Plaintiff's Response at 18-19. But maintenance of a website, even one containing allegedly infringing materials, that is accessible in the forum state is not enough to establish specific jurisdiction. See *Revell*, 317 F.3d at 471 ("Though the maintenance of a website is, in a sense, a continuous presence everywhere in the world . . . [such contact is] not in any way substantial."). Because the evidence submitted by M3Girl shows the defendants' website devoid of any and all uses of the allegedly infringing slogan at the time the Texas sale occurred and M3Girl has not alleged any relationship between the images on the defendants' website that allegedly infringe M3Girl's copyright protections and the Texas sale, the plaintiff has not made a *prima facie* showing that its claims arise from or relate to the defendants' one contact with the forum state.[3] Even if it is assumed *arguendo* that the plaintiff could make such a

---

[3] The plaintiff also alleges that the defendants are amenable to personal jurisdiction under the stream of commerce theory because "the bottle cap necklaces sold by the Defendants were directed to this forum, and it is reasonable to foresee that other products sold by the Defendants would also make their way into this forum." Plaintiff's Response at 22-23 n.7. The court is not persuaded. Plaintiff is

(continued...)

showing, personal jurisdiction would not be proper in the present case because such a result would, for the reasons discussed below, violate traditional notions of fair play and substantial justice.

2. *General Jurisdiction*

M3Girl argues only that the court has specific jurisdiction over the defendants. Plaintiff's Response at 12. Because M3Girl does not allege any systematic and continuous contact between the defendants and Texas, the court need not address the question of general jurisdiction. Even if the issue were raised, one sale to Texas falls

---

[3](...continued)
charged with doing more than making conclusory allegations of speculative contacts without any suggestion of supporting facts, even under the stream of commerce theory. See *Biggs v. Bass Pro Outdoor World, LLC*, No. 304CV1920R, 2005 WL 1511129 at *2 (N.D. Tex. June 27, 2005) (Buchmeyer, J.) (citing *Panda Brandywine Corporation v. Potomac Electric Power Company*, 253 F.3d 865, 868 (5th Cir. 2001)). The plaintiff has not alleged that the defendants reached beyond their home state of Florida and purposefully availed themselves of the benefits of doing business in Texas. The plaintiff does not dispute the defendants' claim that they principally do business in the northeastern and east coast regions of the United States. The plaintiff also does not dispute the defendants' claim that they have never marketed their business in Texas or done any other business with Texas residents. The mere fortuity that the defendants made one sale to a Texas resident, which was initiated by the Texas resident using the defendants' website, is not enough to demonstrate purposeful availment. See *United Galvanizing Inc. v. Imperial Zinc Corporation*, No. H-08-0551, 2008 WL 4746334 at *7-9 (S.D. Tex. Oct. 27, 2008). The stream of commerce theory does not relieve the plaintiff of its burden of presenting a *prima facie* case of minimum contacts. In copyright cases alleging personal jurisdiction under the stream of commerce theory, the plaintiff must show that (1) the non-resident defendant delivered its allegedly infringing work into the stream of commerce with the expectation that the work would make its way into the forum state, and (2) there is a connection between the plaintiff's injuries, the forum state, and the defendant delivering the infringing work into the stream of commerce. *Isbell*, 2004 WL 1243153 at *9. M3Girl has made no such showing.

far short of the continuous and systematic contacts necessary for a sweeping exercise of general jurisdiction. See *Drive*, 2007 WL 2084113 at *7; see also *Helicopteros Nacionales*, 466 U.S. at 415-16.

D. <u>Fair Play and Substantial Justice</u>

The due process inquiry limits a court's jurisdiction over a nonresident if the exercise of jurisdiction would not comport with "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. To evaluate fairness and substantial justice, the Fifth Circuit considers "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interests of the several states in furthering fundamental social policies." *Luv n' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir.), *cert. denied*, 548 U.S. 904 (2006). The burden rests on the defendant to prove that litigating in this court would be "so gravely difficult and inconvenient" that he would be at a "severe disadvantage" relative to the plaintiff. *Burger King*, 471 U.S. at 477-78. "[I]t is incumbent on the defendant to present a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Jones*, 954 F.2d at 1068.

Bishop is a Florida resident with no tangible ties to Texas, and Sweaters is Bishop's unincorporated sole proprietorship. Motion to Dismiss at 3; Plaintiff's

Response at 9. Bishop's taxable income for the year 2008 was reportedly below zero. Defendant's Reply at 3. She is representing herself *pro se*, and she claims that the cost of defending against this litigation in Texas will be prohibitive. *Id*. at 10. Indeed, forcing Bishop to defend herself in Texas would create considerable financial hardship for Bishop and might prevent her from fully defending against this litigation, impeding the court's ability to make a fair determination of the merits of M3Girl's claims.

Certainly, Texas has an interest in protecting its citizens and corporations and providing a forum for its residents to adjudicate claims. But, Florida surely has an equally compelling interest in protecting its citizens from costly litigation in a foreign forum. This factor, therefore, weighs equally for both parties.

M3Girl has a vested interest in protecting its intellectual property. However, there is a substantial disparity in resources between M3Girl and the defendants. Nothing in the record suggests that M3Girl could not fairly prosecute this case in Florida. M3Girl sells jewelry throughout the United States, including in Florida, and travels extensively across the United States to promote its products. M3Girl should have little trouble maintaining this action in Florida while still fully litigating the issues. This factor weighs in the defendants' favor.

Pursuing this controversy in Florida would allow the case to be decided on the merits with less chance of a default judgment. Choosing a court that is a fair and

reasonable forum for both parties is inherently an efficient use of judicial resources and furthers states' shared interests in promoting fundamental social policies.

The weight of the fairness factors tips heavily in the defendants' favor. While the ability of a plaintiff to be able to choose a forum and a state's interest in protecting its citizens can require a heavy burden on a defendant, the court concludes that ordering the defendants to defend against this litigation in Texas would offend "traditional notions of fair play and substantial justice" as described in *International Shoe*, 326 U.S. at 316.

## III. CONCLUSION

For the reasons stated above, the defendants' motion to dismiss for lack of personal jurisdiction is **GRANTED**, and the defendants' motion to dismiss for insufficient service of process is **DENIED** as moot.

**SO ORDERED**.

September 13, 2010.

_____
**A. JOE FISH**
**Senior United States District Judge**